**In re UNITED METHODIST YOUTHVILLE, INC.**
**Debtor.**

**United Methodist Youthville, Inc., Plaintiff,**

v.

**Lutheran Social Services, Defendant.**

**Bankruptcy No. 01–12986.**
**Adversary No. 02–5311.**

United States Bankruptcy Court, D. Kansas.

March 10, 2003.

Edward J. Nazar, Redmond & Nazar, L.L.P., Wichita, KS, for debtor.

Mark G. Ayesh, Wichita, KS, Sherill Carlson, McPherson, KS, Gary W. Carpenter, Newton, KS, Brenda J. Clary, Asst. Atty General, Topeka, KS, Terry D. Criss, Salina, KS, Terry C. Cupps, Foulston & Siefkin L.L.P., Van M. Halley, Wichita, KS, James Daniels, Daniel J. Gronniger, Robert R. Hiller, Jr., Social & Rehabilitation Services, Office of General Counsel/Legal Division, Topeka, KS, Brian M. Holland, Lathrop & Gage LC, Kansas City, MO, Roger D. Hughey, Robert W. Kaplan, Jack C. Marvin, Steven L. Speth, Eric S. Strickler, William H. Zimmerman, Jr., Case, Moses, Zimmerman & Wilson, P.A., Wichita, KS, Anne M. Kindling, Goodell, Stratton, Edmonds & Palmer, Topeka, KS, Shirla R. McQueen, Liberal, KS, Thomas M. Mullinix, P.A., Evans & Mullinix, P.A., Shawnee, KS, Robert D. Myers, Newton, KS, Ken W. Strobel, Williams, Strobel Malone, Mason & Ralph PA, Dodge City, KS, R. Greg Wright, Topeka, KS, for creditor.

Ruth Ann Herman, Dodge City, KS, pro se.

### *MEMORANDUM OPINION*

ROBERT E. NUGENT, Chief Judge.

This adversary proceeding is before the Court on the defendant Lutheran Social Services of Kansas Oklahoma, Inc.'s ("LSS") Motion to Dismiss ("Motion") for

lack of subject matter jurisdiction.[1] LSS contends that the bankruptcy court lacks jurisdiction over plaintiff's action to collect a receivable owed by LSS because such an action is not a core proceeding under 28 U.S.C. § 1334 and 28 U.S.C. § 157. For the reasons discussed below, this Court agrees and grants the Motion of LSS.

### Procedural and Factual Background

The plaintiff, United Methodist Youthville, Inc. ("Youthville") is a chapter 11 debtor, having filed for bankruptcy relief on June 22, 2001. Youthville filed a Complaint for Turnover and Recovery of Asset against "Lutheran Social Services" on December 23, 2002, seeking to collect an account receivable from LSS.[2]

On January 2, 2003 two motions to dismiss were filed—one by the named defendant Lutheran Social Services, Inc. and one by Lutheran Social Services of Kansas Oklahoma, Inc.[3] As set out in the named defendant's motion, Lutheran Social Services, Inc. is not the proper party defendant since it had no business dealings with Youthville. The motion further alleged that Lutheran Social Services of Kansas Oklahoma, Inc. was the proper party. The motion to dismiss filed by Lutheran Social Services of Kansas Oklahoma, Inc., however, alleged that the adversary was not a core proceeding and the bankruptcy court lacked jurisdiction.

Youthville amended its complaint on January 13, 2003 to name Lutheran Social Services of Kansas Oklahoma, Inc. as the party defendant.[4] Thereafter, Youthville filed its objection to LSS' Motion, contending that its adversary complaint was a core proceeding and the bankruptcy court had jurisdiction to hear it.[5] Neither party cited the Court any authority. The Court took the matter under advisement.

### Analysis

The issue before this Court is whether a bankruptcy court has jurisdiction over a debtor's adversary proceeding to collect a prepetition account receivable.[6] This Court is required to determine whether the adversary action is a core proceeding or is a proceeding "related to" a case under title 11.[7] Because this Court concludes that Youthville's collection action is not a core proceeding[8] and declines to exercise "related-to" jurisdiction,[9] the Court answers the question in the negative.

1. Dkt. 6.

2. Dkt. 1. Youthville recognized an offsetting receivable due LSS by Youthville and alleges a net receivable of approximately $194,000 is due Youthville after the offset. Youthville seeks turnover of the receivable and a money judgment for the net amount due. LSS has not filed a proof of claim in Youthville's bankruptcy case.

3. Dkt. 4 and 6.

4. Dkt. 10.

5. Dkt. 14.

6. It is unclear from the pleadings, and Youthville does not specify, whether the subject receivable is a prepetition debt or a postpetition debt. The pleadings suggest to this Court, however, that it is a receivable related to services provided prepetition. LSS neither appeared in this case nor filed a proof of claim.

7. See 28 U.S.C. § 157(a) and (b)(3). The test for determining whether a civil proceeding is related is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. In re Gardner, 913 F.2d 1515, 1518 (10th Cir.1990).

8. See 28 U.S.C. § 157(b)(1) and (2).

9. See 28 U.S.C. § 157(a), (c)(1) and 28 U.S.C. 1334(b) and (c)(1) and (2).

28 U.S.C. § 157(b)(2) sets forth a nonexclusive list of the types of proceedings that are "core." An action to collect a receivable does not squarely fit into any the enumerated categories. Case law indicates that a proceeding is not "core" where it does not invoke any substantive right created by federal bankruptcy law and it is based on a cause of action that could be brought in a forum other than bankruptcy court.[10] Youthville relies on § 157(b)(2)(A) (matters concerning administration of the estate), § 157(b)(2)(E) (turnover),[11] and the fact that the LSS receivable is an asset of the bankruptcy estate and collection thereof is contemplated in its proposed plan of reorganization.[12] Such an expansive reading of § 157(b)(2)(A), however, would make nearly every civil action a "core" proceeding, obliterating the important constitutional distinction between core and non-core matters.[13]

The matter before the Court today is little different from the state law contract claim at stake in the landmark *Marathon*

decision. In that case, the United States Supreme Court held that Congress' conferring all of the district court's bankruptcy jurisdiction on the bankruptcy court was a constitutionally impermissible delegation of the judicial power of the United States to Article I judges, who serve without life tenure or salary protection.[14] Section 157 was enacted in response to *Marathon* with the purpose of redefining the contours of a bankruptcy judge's power within constitutional limits. Section 157(c)(1) and (2) make clear that a bankruptcy judge can only hear and determine matters "related to" bankruptcy cases subject to de novo review by the district court, unless the parties consent to the bankruptcy judge's final determination of a "related to" proceeding.

The Court's independent research reveals that the prevailing, and better, view is that an action to collect a prepetition account receivable is non-core and, therefore, a "related to" proceeding.[15] Nothing

---

**10.** *See In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990); *In re BNI Telecommunications, Inc.,* 246 B.R. 845, 849 (6th Cir. BAP 2000).

**11.** The Court is not persuaded that characterization in the heading of the complaint with a request for "turnover" qualifies the adversary as a core proceeding. *See* 28 U.S.C. § 157(b)(2)(E). To allow such "labeling" of the complaint to render the proceeding core would elevate form over substance. This the Court declines to do. *See In re Shea & Gould,* 198 B.R. 861, 865 (Bankr.S.D.N.Y.1996); *In re Atlas Automation, Inc.,* 42 B.R. 246, 247 (Bankr.E.D.Mich.1984).

**12.** Dkt. 10.

**13.** *See In re Gardner,* 913 F.2d 1515, 1518 (10th Cir.1990), *citing In re Colorado Energy Supply, Inc.,* 728 F.2d 1283 (10th Cir.1984) ("Related" proceedings are those civil proceedings that, in the absence of a petition in bankruptcy, could have been brought in a district court or state court.); *In re Castlerock Properties,* 781 F.2d 159, 162 (9th Cir.1986)

(State law contract claims that do not specifically fall within the core categories § 157(b)(2)(B)—(N) are related proceedings even if they arguably fit within the literal wording of the catch-all categories § 157(b)(2)(A) and (O).).

**14.** *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 71–72, 80, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982).

**15.** *See In re Charter Behavioral Health Systems, LLC,* 277 B.R. 54, 57 (Bankr.D.Del. 2002) (Debtor's action to recover prepetition account receivable due for medical services rendered under prepetition provider agreement was non-core proceeding); *In re McCrary & Dunlap Const. Co.,* 256 B.R. 264, 266–67 (Bankr.M.D.Tenn.2000); *In re Wood,* 216 B.R. 1010, 1013 (Bankr.M.D.Fla.1998); *In re Shea & Gould,* 198 B.R. 861, 866–67 (Bankr.S.D.N.Y.1996); *In re Nell,* 71 B.R. 305 (D.Utah 1987); *In re Satelco, Inc.,* 58 B.R. 781 (Bankr.N.D.Tex.1986). *See also,* L. King, 1 COLLIER ON BANKRUPTCY, ¶ 3.01[4][ii][A], p. 3–28 (Rev. 15th ed.2002).

is presented here to persuade the Court otherwise. The Court is cognizant of several decisions, including two reported in this District, which hold to the contrary.[16] These decisions controvert the clear mandate of *Marathon* and this Court respectfully disagrees with their conclusions. As so succinctly stated by Professor King in *Collier's*, "[i]t should be clear that actions to collect prepetition accounts receivable are straightforward *Marathon*-type contract actions and are, thus, not core proceedings."[17]

The Court's determination that Youthville's collection action is not a core proceeding does not end the inquiry however. This Court may exercise "related to" jurisdiction over non-core proceedings but its power to determine related proceedings is limited.[18] Moreover, the abstention provisions in 28 U.S.C. § 1334(c) come into play for related proceedings. Neither LSS nor Youthville addresses abstention.

■■ Discretionary abstention is provided for in § 1334(c)(1) and mandatory abstention is set forth in § 1334(c)(2). The Tenth Circuit Bankruptcy Appellate Panel has identified several factors in *In*

*re Midgard Corp.*[19] for determining whether the bankruptcy court *must* abstain from hearing a related proceeding. Among those factors are: (1) a timely motion of a party is filed; and (2) a proceeding has been commenced in a state forum of appropriate jurisdiction and can be timely adjudicated. Based upon the record before it, the Court concludes that one or both of these factors is absent here. Arguably, LSS' Motion to Dismiss satisfies the motion requirement since it raises the bankruptcy court's jurisdiction to hear the adversary proceeding. However, the Court believes that the "motion" contemplated by *Midgard* is a motion for abstention.[20] In any event, there is no indication of the prior pendency of an action in another court to determine this claim. Accordingly, the Court is not *required* to abstain from hearing this adversary.

■■ Based on the record at hand, this Court could conclude that it is appropriate to exercise discretionary abstention under § 1334(c)(1). Nothing in the record suggests that Youthville's action to collect the receivable from LSS could have been commenced independently in federal court absent "related to" jurisdiction.[21] No sub-

---

16. *See In re American Freight System, Inc.*, 164 B.R. 341 (D.Kan.1994) (debtor's adversary proceeding to collect freight undercharges from shipper was analogous to the collection of a matured account receivable and in the nature of a turnover proceeding and thus, a core proceeding under § 157(b)(2)(E)); *In re Bucyrus Grain Co., Inc.*, 56 B.R. 204 (Bankr.D.Kan.1986) (recognizing split of authority but concluding that an action to collect an account receivable is a core proceeding under § 157(b)(2)(A)).

17. *See* L. King, 1 COLLIER ON BANKRUPTCY, ¶ 3.02[4], p. 3–44 (Rev. 15th ed.2002).

18. The bankruptcy court may not issue final orders on "related-to" proceedings. The bankruptcy court's power with respect to "re-

lated" proceedings is limited to making a recommendation to the district court. *See* 28 U.S.C. § 157(c)(1).

19. 204 B.R. 764 (10th Cir. BAP 1997).

20. *See Midgard, supra* at 776. A motion to remand a removed state court action satisfied the timely motion requirement even though the motion was not captioned as one for mandatory abstention and made no reference to § 1334(c)(2). A request that the bankruptcy court abstain was contained in the body of the motion.

21. It does not appear from the record that diversity jurisdiction exists. It is alleged in one motion to dismiss that LSS is a Kansas corporation. *See* Dkt. 4.

stantive bankruptcy law or federal law question is implicated in Youthville's action. The adversary proceeding is purely based upon state law. State court may be the more appropriate forum for Youthville's claim and there is no suggestion that the state court is incapable of timely adjudicating this collection action. Finally, given this Court's limited power to finally determine the adversary proceeding, it simply makes more sense to pursue the claim in state court where a final order or judgment can be entered.[22] Thus, this Court believes that it should abstain from hearing this matter and declines to exercise "related to" jurisdiction unless the parties consent to this Court's hearing, and finally determining, Youthville's claim.

Because the matter of abstention was not addressed in either the Motion or the objection, the Court grants the parties 15 days in which to file supplemental briefs concerning abstention or to file a notice evidencing their mutual consent to this Court's hearing and determining the matters raised in this proceeding. If neither briefing nor such a notice is filed within this period, the Motion to Dismiss of LSS will be GRANTED by separate order.