**In re FRG.**

**Bankruptcy No. 89–12766S.**
**Civ. A. No. 90–2819.**

United States District Court,
E.D. Pennsylvania.

June 4, 1990.

Hahn & Hessen, Marilyn Simon, Stroock & Stroock & Lavan, Schnader Harrison Segal & Lewis, Skadden Arps Slate Meagher & Flom, Kaye Scholer Fierman Hays & Handler, Schulte Roth & Zabel, New York City, for plaintiffs.

James O'Connell, Philadelphia, Pa., FRG Management Inc., Ambler, Pa., for defendants.

## MEMORANDUM

WALDMAN, District Judge.

In the recent case of *Hays & Co. v. Merrill Lynch, Pierce, Fenner & Smith*, 885 F.2d 1149 (3rd Cir.1989), the Third Circuit Court of Appeals held that federal courts lack discretion to deny enforcement of a contractual arbitration clause invoked in the context of a non-core adversary proceeding brought by a debtor's trustee. In reaching its holding, the court cited the strong national policy favoring arbitration and the apparent lack of conflict, in the specific context of that case, between the policies underlying the American Arbitration Act, 9 U.S.C. § 1, *et seq.*, and the Bankruptcy Code, 11 U.S.C. § 101 *et seq.*

The present cross-appeal from the bankruptcy court calls upon this court to decide whether the *Hays & Co.* holding applies with equal force to a core proceeding

brought by a third party for relief from the automatic stay provisions of the Bankruptcy Code. Because the court concludes that it does not, we will reverse and remand.

The relevant facts of record are as follows. Appellee FRP is a Pennsylvania limited partnership. Appellee FRG is a Pennsylvania corporation which also acts as the general partner of FRP. On May 17, 1989, FRG and FRP filed for reorganization under Chapter 11. They have since continued to operate their properties as a debtor-in-possession.

FRP is itself a general partner of approximately 60 syndicated real estate limited partnerships. Appellants are three limited partners in FWALP, one of these ventures, who together own 66⅔% or more of FWALP.

The FWALP Partnership Agreement ("Agreement") provides, *inter alia*, that the limited partners may remove a general partner "for due cause." [1] Whether due cause exists "shall be resolved by arbitration in Philadelphia, Pennsylvania, in accordance with the rules then in effect of the American Arbitration Association." Agreement, § 5.2(a). In the event FRP is removed as the general partner, FWALP is required to pay FRP for the value of its 1% equity interest offset by any damages caused by the act which constituted due cause removal. Agreement, § 5.2(b).

Appellants allege that sometime in September 1989, four months after the petition filing date, due cause for removal arose, in that: (1) FRP refused to market a shopping center, FWALP's primary asset, for sale, and (2) FRP's obligations as a debtor-in-possession somehow conflicted with its duties as a general partner of FWALP. Appellees dispute these assertions. At a March 21, 1990 hearing on appellants' motion below, appellants argued, without presenting any testimony or evidence, that arbitration was automatically compelled by the *Hays & Co.* decision. In a brief order

dated the same day, the bankruptcy court granted appellants' motion to vacate the automatic stay "for cause" pursuant to 11 U.S.C. § 362(d)(1), but expressly stated that it felt compelled to do so by the *Hays & Co.* holding in spite of a "very sparse record." Further, the court withheld enforcement of its order until June 1, 1990 in order not to impede appellees' preparation of a Plan and Disclosure Statement due on that date.

Appellants contend that this final condition of the bankruptcy court effectively denied their motion for relief and, in any event, constituted an exercise of discretion not permitted by the *Hays & Co.* decision. Appellees, on the other hand, argue that the bankruptcy court erred as a matter of law in holding that *Hays & Co.* deprived it of any discretion whatsoever to decide whether or not to enforce the arbitration clause at issue.

It is well settled that a decision denying relief from the automatic stay provisions of the Bankruptcy Code may only be reversed if the bankruptcy judge abused his discretion. *In re Highway Truck Drivers and Helpers Local Union 107*, 98 B.R. 698, 704 (E.D.Pa.1989); *In re Halley*, 70 B.R. 283, 284 (E.D.Pa.1987). Appellees' contend that the bankruptcy court abused its discretion by refusing to exercise any discretion at all under circumstances where it erroneously concluded that it had no power to exercise any. An abuse of discretion exists whenever a judicial action is "arbitrary, fanciful, or unreasonable, or when improper standards, criteria, or procedures are used." *Evans v. Buchanan*, 555 F.2d 373, 378–79 (3d Cir.1977), *citing Lindy Bros. Builders, Inc. v. American Radiator and Standard Sanitary Corp.*, 540 F.2d 102, 115–16 (3d Cir.1976) (en banc), and *cert. denied*, 434 U.S. 880, 98 S.Ct. 235, 54 L.Ed.2d 160 (1977).

---

1.  Due cause is defined under the agreement as: [T]he commission of any fraudulent, illegal or dishonest act having a direct, material and adverse consequence to the Partnership or the Limited Partners or the willful and persistent failure of a General Partner to perform its fiduciary duties as the general partner of a limited partnership, provided, however, that the poor financial performance of the Partnership shall not of itself constitute due cause. Agreement, § 5.2(a).

■ The issue which must be decided is whether the holding in *Hays & Co.* was intended to reach the present setting of a core proceeding against the trustee.[2] The court concludes that it was not. The narrow holding in *Hays & Co.* was that the purposes of the Bankruptcy Code are not compromised by honoring an arbitration provision in the context of a non-core proceeding by a trustee against a third party to enforce a right derived or inherited from the debtor. Thus, there is no need or reason for a court to balance the purposes of the Bankruptcy Code against the strong policy in favor of arbitration. 885 F.2d at 1157–62. Referring to several recent Supreme Court opinions interpreting the Arbitration Act, the Court in *Hays & Co.* stated:

> The message we get from these recent cases is that *we must carefully determine whether any underlying purpose of the Bankruptcy Code would be adversely affected by enforcing an arbitration clause and that we should enforce such a clause unless that effect would seriously jeopardize the objectives of the Code.* Where, as here, a trustee seeks to enforce a claim inherited from the debtor in an adversary proceeding in a district court, we perceive no adverse effect on the underlying purposes of the Code from enforcing arbitration—certainly no adverse effects of sufficient magnitude to relieve a district court of its mandatory duty under the Arbitration Act as interpreted in the recent case law.

*Id.* at 1161 (emphasis added).

Unlike the situation presented in *Hays & Co.*, enforcing a contractual arbitration provision here could impinge upon policies underlying the Bankruptcy Code. The legislative history of 11 U.S.C. § 362(a) expressly states that the automatic stay was intended to apply to "[a]ll proceedings ... including *arbitration*, license revocation, administrative, and judicial proceedings." 11 U.S.C.A. § 362; H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 340 (1977), *reprinted*

*in* 1978 U.S.Code Cong. & Admin.News 5787, 6297 (emphasis added). Section 362(d)(1), in turn, permits a bankruptcy court to lift or modify the automatic stay "for cause." This latter subsection has long been viewed as a vehicle for creditors to obtain relief from the automatic stay only upon a showing that the balance of hardships from not obtaining relief tips significantly in their favor. *See In re Ronald Perlstein Enterprises, Inc.*, 70 B.R. 1005, 1009–10 (Bankr.E.D.Pa.1987). As the *Perlstein* court noted, a primary reason for this is to preserve the debtor's corpus by not requiring the debtor to expend its limited resources and energies in defending cases in a number of forums. *Id.* at 1009.

Appellants apparently argue that, after *Hays & Co.*, the mere presence of an arbitration clause in a contract should automatically foreclose any balancing process and should *per se* constitute "cause" under § 362(d)(1) not only to displace an unwilling debtor from bankruptcy court, but to give a creditor priority over all others waiting in line. This conclusion strikes the court both as inequitable and illogical in light of the text and structure of the Code itself.

It is inequitable since it would give any aggrieved party who could cite to an arbitration clause in its contract an exalted status over all other creditors. This would occur even though the other creditors were not privy to the underlying contract and reaped no benefit from the contractual bargain.

It is illogical since appellants urge the court to interpret the Code as rendering the combination of §§ 362(a)(1) and 362(d)(1) nugatory. Appellants in effect argue that Congress, on the one hand, intended to stay all arbitration proceedings under § 362(a)(1), but also intended in § 362(d)(1) to permit relief from the stay without any showing of hardship whatsoever. If this in fact were what Congress intended, it need not have stayed arbitration proceedings in the first place, and indeed could have drafted the automatic stay

---

**2.** The present matter is a core proceeding since it involves a motion to terminate, annul, or modify the automatic stay. 28 U.S.C. § 157(b)(2)(G).

provisions of the Bankruptcy Code without any reference to arbitration whatsoever.

It is one thing to force a trustee who has voluntarily commenced suit against a third party for the benefit of the estate on a claim inherited from the debtor to abide by the forum selection terms of the contract he is attempting to enforce. It is quite a different matter, however, to permit various creditors to bypass carefully established procedures in order to force an unwilling debtor to litigate a number of actions in a number of forums merely because those creditors' contracts happen to include a standard arbitration clause. In such a world, the mere cost of defending these various suits could deplete the corpus of substantial funds. This depletion would obviously be exacerbated if these arbitration proceedings ultimately assessed damages against the debtor.

The court is mindful of the strong federal policy favoring arbitration. *See Shearson/American Express, Inc. v. McMahon,* 482 U.S. 220, 226, 107 S.Ct. 2332, 2337, 96 L.Ed.2d 185 (1987); *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.,* 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983). Indeed, such policy considerations arguably deserve particular weight where, as here, it is not clear that any result reached at arbitration would convert the movants into creditors of the debtor.[3] However, where the federal policy in favor of arbitration inherently conflicts with and jeopardizes another federal policy to protect the rights of creditors, a case-by-case balancing of hardships should be performed.

Because it is apparent from the record that the bankruptcy court believed it had no discretion to perform such balancing and thus did not apply the proper criteria and procedure in adjudicating this matter, and because the record is devoid of any attempt by appellants to demonstrate hard-

ship in the event relief is not obtained, we will remand for a rehearing on the motion.

An appropriate Order follows.

---

**3.** This is because the Partnership Agreement provides that, upon removal, FRP will be paid its interest in FWALP, less damages resulting from the event which initiated due cause removal. Thus, only in the event that damages exceeded the value of FRP's interest in FWALP would appellants be creditors of FRP.